UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| SLF NO. 1, LLC d/b/a WYNDRIDGE HEALTH & REHABILITATION CENTER, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:12-00070 ) Judge Sharp |
| UNITED HEALTHCARE SERVICES INC., UNITED HEALTHCARE SERVICE LLC, and ESTATE OF LUCILLE STITES, | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM

In this dispute over $27,541.00 in unpaid skilled nursing and rehabilitation care, Defendant United Healthcare Service LLC ("UHC") has filed a Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 32), to which Plaintiff SLF No. 1, LLC d/b/a Wyndridge Health and Rehabilitation Center ("Wyndridge") has responded in opposition (Docket Nos. 34 & 35) and UHC has replied (Docket No. 36). The Motion to Dismiss will be granted in part and denied in part.

### I. FACTUAL BACKGROUND

According to the Amended Complaint, Lucille Stites was admitted to Wyndridge in Crossville, Tennessee on December 23, 2009. At the time, she presented a UHC health insurance card which evidenced a health insurance plan ("the "Stites insurance plan") and instructed providers: "for verification of benefits, please call Customer Service." (Docket No. 21, Am. Cmpl. ¶ 8). Following those instructions, Michelle Weaver, who works in accounting services at Wyndridge, called UHC on January 8, 2010, to verify coverage and was informed "that Medicare

1

was the primary carrier but that after the Stites' Medicare coverage was exhausted, Mrs. Stites would have 120 days of coverage for skilled nursing remaining under the Stites Insurance Plan." (Id.). Wyndridge claims to have relied upon UHC's verification in providing skilled nursing care, rehabilitation, and other health related services to Mrs. Stites.

The Medicare coverage for Mrs. Stites was exhausted on February 4, 2010, but Mrs. Stites remained at Wyndridge and incurred additional bills. Wyndridge submitted claims to UHC for services provided to Mrs. Stites for the periods February 4-28, 2010, March 8-30, 2010, April 5-30, 2010, and May 1-17, 2010, totaling $37,825.00. Initially, the claims were denied. However, after submitting and resubmitting requested documentation, placing numerous phone calls, and sending faxes, UHC paid Wyndridge $10,284 some 22 months after Wyndridge first made a claim. There remains $27,541.00 in unpaid bills.

Based upon these events, Wyndridge filed suit in the Cumberland Circuit Court. After the case was removed to this Court, Wyndridge file a seven-count Amended Complaint. The first three counts present state law claims for bad faith refusal to pay, unfair claims practices, and negligent misrepresentation. Count 4 is a federal common law claim for equitable estoppel, unjust enrichment, and/or quantum meruit. Counts 5 and 6 are substantive claims under the Employee Retirement Income Security Act ("ERISA"), specifically the refusal to supply requested information in violation of 29 U.S.C. § 1132(c), and breach of fiduciary duty in violation of 29 U.S.C. § 1104. Finally, Count 7 is a request for attorneys fees under 29 U.S.C. § 1132(g) based upon the alleged ERISA violations.

### III. LEGAL DISCUSSION

UHC seeks dismissal of all of Wyndridge's claim under Rule 12(b)(6) of the Federal Rules

of Civil Procedure. UHC argues that the state law and federal common law claims are preempted by ERISA, and that the ERISA claims fail to state a claim upon which relief can be granted.

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take "all well-pleaded material allegations of the pleadings" as true. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010). The factual allegations in the complaint "need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)). "'A legal conclusion couched as a factual allegation,'" however, "need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." Id. (quoting Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) and Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007)).

## A. **Non-ERISA Claims**

"'ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans.'" Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 137 (1990) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983)). To that end, Section 1132(a)(1)(B) provides that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" ERISA also (with limited exceptions) "supersedes any and all State laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan." 29 U.S.C. § 1144(a). "Thus, when a state-law claim by its nature 'falls within the scope of' ERISA [Section 1132(a)(1)(B)],' two consequences follow: first, the claim is deemed to be a federal claim (albeit an invalid one) for purposes of federal-question

jurisdiction and thus removal; and second, the claim is preempted." Gardner v. Heartland Indus. Partners, LP, 715 F.3d 609, 614 (6th Cir. 2013) (quoting Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004)).

UHC correctly notes that ERISA has a "broad preemptive reach." Cataldo v. U.S. Steel Corp., 676 F.3d 542, 557 (6th Cir. 2012). That reach is not, however, all encompassing. An ERISA claim is only preempted "if two requirements are met: (1) the plaintiff complains about the denial of benefits to which he is entitled 'only because of the terms of an ERISA-regulated employee benefit plan'; and (2) the plaintiff does not allege the violation of any 'legal duty (state or federal) independent of ERISA or the plan terms[.]'" Gardner, 715 F.3d at 613 (quoting, Davila, 542 U.S. at 210)). Because the test is in the conjunctive, a state law cause of action is preempted only if both prongs are met. Id.

   *1. Counts 1 & 2*

Turning first to Count 1, which alleges a bad faith refusal to pay in violation of Tenn. Code Ann. §§ 56-7-105 & 109, and Count 2, which alleges unfair claims practices in violation of Tenn. Code Ann. 56-8-105, Wyndridge argues that these statutory provisions are not preempted because 29 U.S.C. §1144(b)(2)(A) provides that ERISA's preemption provisions "shall not be construed to exempt or to relieve any person from any law of any State which regulates insurance, banking, or securities." Since the referenced statutes "are found in the Tennessee Code Title 56 'Insurance,' which is known as and may be cited as 'Tennessee Insurance'" pursuant to Tenn. Code Ann. § 56-1-101, Wyndridge insists that those claims are specifically exempted from preemption. (Docket No. 35 at 8).

In a decision rendered after the briefing in this case was completed, Judge Trauger in

4

Productive MD, LLC v. Aetna Health, Inc., 2013 WL 4587859, at *29 (M.D. Tenn. Aug. 28, 2013) addressed an issue that "appear[ed] to be a question of first impression within the Sixth Circuit," to wit "[w]hether ERISA preempts a Tennessee Prompt Pay act claim" brought pursuant to Tenn. Code Ann. § 56-7-109. Prior to doing so, Judge Trauger observed that Tenn. Code Ann. § 56-7-105 imposes a 25% penalty (and attorney's fees) on insurers who fail to pay a reimbursable loss within 60 days of a demand by the insured party, and that this statute was not saved "from preemption under ERISA, because the state statute does not affect the spreading of policyholder risk and does not constitute an integral part of the insured-insurer relationship." Id. at *28 (citing Bishop v. Provident Life & Cas. Ins. Co., 749 F. Supp. 176, 177–78 (E.D. Tenn. 1990)). Turning to the prompt pay statute, Judge Trauger observed that federal courts that have addressed prompt pay statutes in other states have "have reached varying conclusions," but that some have found such claims "not preempted by ERISA under certain circumstances, typically where a provider sues pursuant to a separate contractual agreement with the insurer, *not* pursuant to a patient assignment." Id. at *26 (italics in original) (collecting cases). Judge Trauger then wrote:

> Here, [Plaintiff] appears to assert the Tennessee Prompt Pay Act claim only in its capacity as an assignee. To that extent, and consistent with the findings of the circuit court and district court decisions in other jurisdictions concerning this issue, the court finds that the Prompt Pay Act claims are preempted by ERISA relative to the ERISA-governed claims for payment. The saving clause does not apply to save the Tennessee Prompt Pay Act claims from preemption, because, although the statute is limited to health care insurers, the Tennessee Prompt Pay Act does not have the effect of transferring or spreading policyholders' risk and does not constitute an integral part of the policy relationship between the insurer and the insured.

Id.

Likewise in this case, Wyndham appears to assert its prompt pay act claim in its capacity as an assignee because (1) it does not claim to have a contractual relationship with UHC, (2) it argues

5

that it is asserting its claims under Counts 3 and 4 on its own behalf and not as an assignee of Stites but does do so with respect to Counts 1 and 2, and (3) it does not contest UHC's assertion that Wyndridge received an assignment of rights from Mrs. Stites. Given the allegations in the Amended Complaint and the absence of any cited authority to the contrary, the Court finds Productive MD persuasive and will dismiss Wyndridge's claims under Tenn. Code Ann. §§ 56-7-105 and 56-7-109 as set forth in Count 1.

For much the same reason, the Court will dismiss Count 2, which is brough under Tenn. Code Ann. § 56-8-105. That statute "sets out a list of fifteen types of 'acts by an insurer or person' that constitute unfair claims practices." Leverette v. Tennessee Farmers Mut. Ins. Co., 2013 WL 817230, at *24 (Tenn. Ct. App. Mar. 4, 2013). Wyndham does not explain how an assignee's enforcement of that statute would have the effect of transferring or spreading risks or play an integral part of the policy relationship between the insurer and insured, any more than the enforcement of a prompt pay act claim would. Moreover, and unlike Tenn. Code Ann. § 56-7-105, Tenn. Code Ann. § 56-8-105 does not provide for a private cause of action. Id. at *16-17; see also,Tenn. Code Ann. 56-8-101(c) ("Notwithstanding any other state law to the contrary, the commissioner shall have sole enforcement authority for this part, and nothing in this part shall be construed to create or imply a private cause of action for a violation of this part"). Accordingly, Count 2 will be dismissed.

### *2. Counts 3 & 4*

The next two counts in the Amended Complaint seek recovery of the unpaid $27,541.00 either under a state law negligent misrepresentation theory (Count 3), or an equitable estoppel, unjust enrichment, and/or quantum meruit theory under federal common law (Count 4). These two

claims are said to be brought by Wyndridge on its own behalf, and not as an assignee of Stites. The Court will not dismiss these claims.

Several cases support the conclusion that dismissal of these claims is unwarranted. In Lordmann Ent., Inc. v. Equicor, Inc., 32 F.3d 1529 (11th Cir. 1994), the Eleventh Circuit held that "ERISA does not preempt a health care provider's negligent misrepresentation claim against an insurer under an ERISA plan." That decision was made in the context of a claim to recover the cost of long-term rehabilitation services by a healthcare provider against the administrator of a group health insurance plan. In finding no ERISA preemption, the court relied heavily upon Memorial Hospital Sys. v. Northbrook Lief Ins. Co., 904 F.2d 236 (5th Cir. 1990), which involved "very similar" facts; specifically, that a hospital called the insurer to confirm coverage for a patient and upon receiving confirmation provided costly service, which went unpaid.

In Memorial, the Fifth Circuit stated that preempting a claim by a third-party health care provider would defeat ERISA's goal of protecting the interests of both employees and beneficiaries covered by benefit plans. The court also reasoned that health care providers were not parties within the scope of ERISA, and that while employees and employers gave up state law causes of action in return for causes of action under ERISA, third-party providers receive no such correlative rights. Finally, the Memorial court discussed the "commercial realities" when a healthcare provider admits patients said to be covered by insurance:

> The scenario depicted in Memorial's appeal is one that is reenacted each day across the country. A patient in need of medical care requests admission to a hospital (or seeks treatment from a doctor). The costs of medical care are high and many providers have only limited budget allocations for indigent care and for losses from patient nonpayment. Naturally, the provider wants to know if payment reasonably can be expected. Thus, one of the first steps in accepting a patient for treatment is to determine a financial source for the cost of care to be provided.

7

> If a provider believes that a patient may be covered under a health care plan, it is a customary practice to communicate with the plan agents to verify eligibility and coverage. If the provider confirms that a patient has health insurance that covers a substantial part of the expected costs of the health care, it will normally agree to admit the patient without further ado. . . .
>
> If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan. If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received. The only question is whether the risk of non-payment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan. A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage.

Memorial, 904 F.2d at 246.

More recently, and based largely on Memorial and to a lesser extent on Lordmann, the United States District Court for the District of Colorado held that a hospital could amend its complaint to assert a negligent misrepresentation claim against an administrator of a welfare benefit plan where the hospital rendered some $750,000 in medical services after receiving hospital preadmission authorization, only to be informed later that there was no coverage. Denver Health & Hosp. Auth. v. Beverage Distrib. Co., 843 F.Supp. 1171, 1181 (D. Col. 2012). In doing so, the court noted that, in accordance with cases like Memorial, this was the proper ruling even though the plan participant himself could not bring an action for negligent misrepresentation because of ERISA preemption.

UHC seeks to distinguish Memorial and Denver Health on the grounds that "defendants denied any payment after first precertifying coverage because they determined the individual was ineligible on the dates of service," and those courts observed that the claims did not arise under ERISA because 'there was no plan coverage.'" (Docket No. 36). This seems to be a distinction

8

without a difference because the same can be said about the $27,000 which went unpaid here: there was no coverage and thus no preemption. Further, this argument does not take into account that Lordmann involved a situation in which the plan paid a portion of the claim and (as here) the healthcare provider sued for the remainder of the claim.

UHC seeks to distinguish Lordmann because the claim there was that the administrator represented that the plan would pay the bill "in full," whereas the claim here is that UCH did not promise to pay any portion of the bill, only that it represented that there was coverage. This is too fine a line to draw at the motion to dismiss stage, particularly where Wyndham specifically alleges that UCH represented that Mrs. Stites would have 120 days of coverage (after Medicare coverage elapsed), with the logical inference being that UHC would pay for those 120 days. Moreover, Memorial and Denver Health both reference allegations about eligibility for coverage, with the allegation in Memorial specifically being that the hospital telephoned to "verify coverage" and that the person answering the phone "verified that coverage was available for [the patient's] hospital care." Memorial, 904 F.2d at 2387. Those are the same sort of allegations made here.

UHC also cites Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1996), for the proposition "the Sixth Circuit has held that ERISA preempts misrepresentation claims by providers," and states in an explanatory parenthetical that Cromwell stands for the proposition that "provider's state law negligent misrepresentation claims [are] preempted by ERISA[.]" (Docket No. 36 at 3-4). "Although the court in Cromwell interpreted Davis [v. Kentucky Finan. Cos. Retirement Plan, 887 F.2d 689 (6th Cir. 1989)] as foreclosing a claim of estoppel under ERISA [the Sixth Circuit] has in fact applied a federal common law claim of equitable estoppel in an ERISA case." Kaniweski v. Equitable Life Assur. Soc., 1993 WL 88200 (6th Cir. Mar. 26, 1993).

9

Moreover, "descri[bing] Cromwell as holding that all misrepresentation claims are preempted by ERISA is . . . inaccurate" because Cromwell itself instructs that '[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit.'" Lion's Volunteer Blind Ind., Inc. v. Automated Group Admin., Inc., 195 F.3d 803, 808 (6th Cir. 1999) (quoting, Cromwell, 944 F.2d at 1276).

Finally Sprague v. General Motors Corp., 133 F.3d 388 (6th Cir.1998) (*en banc*) does not bar Wyndham's equitable estoppel claim under federal common law. In Sprague, the Sixth Circuit noted it had "held that equitable estoppel may be a viable theory in ERISA cases, at least in regard to welfare plans." Id. at 403. The court also held, however, that estoppel "cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." Id. at 404. This is partly because "estoppel requires reasonable or justifiable reliance by the party asserting the estoppel," and a "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." Id. at 404. Here, of course, the allegations are quite different – Wyndham, a healthcare provider, was never in possession of the plan documents when it rendered services based upon an alleged representation of coverage. See, Bloemker v. Laborers' Local 265 Pension Fund, 605 F.3d 436, 443 (6th Cir. 2010) (Sprague inapplicable where plaintiff alleged that "it would have been impossible for him to determine his correct pension benefit given the complexity of the actuarial calculations and his lack of knowledge about the relevant actuarial assumptions"); Teisman v. United of Omaha Life Ins. Co., 908 F. Supp.2d 875, 888 (W.D. Mich. 2012) ("Sprague is inapplicable" where plaintiff "never had access to the plan provisions which had th[e] unambiguous language").

10

**B. ERISA Claims**

   *1. Count 5*

Count 5 is brought under 29 U.S.C. 1132(c). Plaintiff alleges that "[w]hile acting in its capacity as an administrator of the Stites Insurance Plan, UHC refused to supply requested information to Wyndridge, including but not limited to a copy of the Stites Insurance Plan Document and documentation outlining claim denials." (Docket No. 21, Am. Cmpl. ¶ 97).

"ERISA imposes particular duties on a plan administrator to provide information to a plan participant," and "[a]n administrator who fails to comply within thirty days with a request for information from a plan participant 'may in the court's discretion be personally liable to such participant . . . in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.'" Hiney Printing Co. v. Brantner, 243 F.3d 956, 960 (6th Cir. 2001). The plan administrator is defined in ERISA as "the person specifically so designated by the terms of the instrument under which the plan is operated," 29 U.S.C. § 1002(16)(A), and "'[t]he law in this Circuit is clear that only a plan administrator can be held liable under 29 U.S.C. 1132(c).'" Cataldo, 676 F.3d at 554 n.9 (quoting, Hiney, 243 F.3d 960).

UHC moves for dismissal of Count 5 because "[t]here is no question that United was a claims administrator and not the plan administrator" (Docket No. 33 at 9), a fact supposedly borne out by the plan which "designates 'Plan Administrator – Medical Plan, Metropolitan Life Insurance Company' as the plan administrator." (Docket No. 36 at 4). However, while "the law in this Circuit is clear," the Sixth Circuit has also indicated that dismissal of a 29 U.S.C. §§ 1132(c) is not appropriate even though the defendant being sued is not the designated plan administrator where

11

there is a question as to whether the defendant had been administering the plan and where, despite repeated requests for plan documents, plaintiff was never informed that it "was contacting the wrong party for that information." Minadeo v. ICI Paints, 398 F.3d 751, 759 (6th Cir. 2005); see also, Lockhart v. Blue Cross Blue Shield of Tenn., 503 F. App'x 926, 928 (11th Cir. 2013) (plan administrator is either the person specifically so designated by the plan, or a company acting as a plan administrator); Law v. Ernst & Young, 956 F.2d 364, 374 (1st Cir. 1992) (entity can be acting as *de facto* plan administrator for purposes of [a] § 1132(c) claim"). At this stage of the proceedings, the Court will not dismiss Wyndridge's claim under 29 U.S.C. § 1132 as alleged in Count 5.

### *2. Count 6*

In Count 6, Wyndham alleges a breach of fiduciary duty. UHC seeks dismissal of this claim solely on the grounds that it is duplicative of a claim for denial of benefits.

In Wilkins v. Baptist Healthcare Sys. Inc., 150 F.3d 609, 615 (6th Cir. 1998), the Sixth Circuit interpreted the Supreme Court's decision in Varity Corp. v. Howe, 516 U.S. 489 (1996), as limiting "the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." As a consequence, a plaintiff "cannot recover compensatory damages for an alleged breach of fiduciary duty" and, thus, an ERISA plaintiff cannot "simply characterize a denial of benefits as a breach of fiduciary duty." Id. Since then, however, "several exceptions have emerged" to the notion that Wilkins should be read "as a complete bar to simultaneous benefits under § 502(a)(1)(B) and breaches of fiduciary duty under § 502(a)(3)," including a fiduciary duty claim "seeking a system-wide injunction against a claim processing technique," a fiduciary duty claim that is supported by a different injury, and a fiduciary duty claim seeking disgorgement.

12

Rochow v. Life Ins. Co. Of No. Am., 737 F.3d 414, 424-25 (6th Cir. 2013) (collecting cases).

At first blush, it would appear that Wyndham's fiduciary breach claim mirrors a denial of benefits claim because the primary relief sought is payment of the outstanding $27,541.00. However, Wyndham also seeks other relief such as an additional 25% penalty and 1% monthly interest. More broadly, Wyndham requests "that the Court award other appropriate relief pursuant to 29 U.S.C. § 1132 *et seq.*" (Docket No. 21 Am. Cmpl. ¶ 107(H)), which, by definition, could include "other appropriate equitable relief" under 29 U.S.C. § 1132(a)(3). Since it is at least plausible that Wyndham may be entitled to relief beyond that encompassed by a denial of benefits claim, Count 6 will not be dismissed at this time.

### 3. Count 7

Finally, Count 7 is a request for attorney's fees under 29 U.S.C. § 1132(g)(1) which provides that "in any action . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." There is "'no presumption as to whether attorney's fees should be awarded'" and the Sixth Circuit has instructed that courts should consider the following factors:

> "(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions."

Geiger v. Pfizer, 2013 WL 5911993, at *2 (6th Cir. Nov. 5, 2013) (quoting Sec. Dep't of Labor v. King, 775 F.2d 666, 669 (6th Cir. 1985).

UHC seeks dismissal of this Count because "ERISA's fee shifting provision applies only in extraordinary circumstances after the conclusion of a case" and, since "the benefit was paid on

February 14, 2012 which was long before Plaintiff filed suit, . . . Plaintiff cannot demonstrate the requisite bad faith." (Docket No. 33 at 10). This argument is a nonstarter for several reasons, including that (1) it ignores the fact that the entire claim was not paid; (2) partial payment was made some 22 months after the initial claim; (3) Wyndridge allegedly did not receive the requested plan documents until after suit was filed; and (4) culpability and bad faith are not the only factors to be considered in determining whether attorney's fees are appropriate. Accordingly, Count 7 will not be dismissed.

## IV. **CONCLUSION**

On the basis of the foregoing, the Court will enter an Order granting UHC's Motion to Dismiss with respect to Counts 1 and 2 of Wyndridge's Amended Complaint, but denying the motion with respect to Counts 3 through 7.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE